UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| EUGENE HUDSON, JR., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-2543 (KBJ) |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER
REQUIRING PLAINTIFFS TO AMEND THEIR COMPLAINT**

Plaintiffs Eugene Hudson, Jr. and Dana Duggins, who are campaigning to be union officeholders, have filed the instant lawsuit against their union, the American Federation of Government Employees ("AFGE"). (*See* Compl., ECF No. 1.) Because this Court cannot assure itself of its own jurisdiction to resolve several of the claims that Plaintiffs say they are now seeking to litigate (*see* Pls.' Resp. to AFGE's Suppl. Br. ("Pls.' Resp."), ECF No. 19, at 3–5)—which appear nowhere in the complaint— Plaintiffs must amend their pleading.[1]

**I.**

The complaint in this matter was filed on November 28, 2017. In this one-count pleading, Plaintiffs allege that AFGE "has denied [them] access to the AFGE TrueBallot email system" for the distribution of their campaign literature, in violation

---
[1] Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns.

1

of their rights under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* (Compl. ¶ 40.) And in both the complaint and Plaintiffs' second motion for a preliminary injunction, Plaintiffs specifically ask this Court to "[d]irect AFGE to grant access to the TrueBallot email system for distribution of campaign literature[.]" (*Id.*, Relief Requested, ¶ 2; *see also* Pls.' Revised Mot. for Prelim. Inj. ("Second Mot. for PI"), ECF No. 8, at 1 (asking the Court to "[r]equire [AFGE] to give Plaintiffs immediate access to its email distribution system or to the TrueBallot e-mail system for distribution of campaign literature to the membership or selected groups of members").)

This request was seemingly fulfilled on January 5, 2018, when the contractor whom AFGE had hired to prepare the TrueBallot email system for use by candidates to distribute campaign literature completed its work, and Plaintiffs were granted access to that email system. (*See* Def.'s Surreply in Opp'n to Pl.'s Revised Mot. for Prelim. Inj. ("Def.'s Surreply"), ECF No. 15, at 1.) But Plaintiffs apparently harbor qualms about the operation and scope of the TrueBallot system, and they have also expressed concerns about the union's delay in granting them access to that system. (*See* Pls.' Resp. to Order to Show Cause ("Pls.' Resp. to Show Cause"), ECF No. 16, at 4.) Thus, Plaintiffs have refused to concede that their receipt of access to TrueBallot moots their case, and instead, have pivoted toward making various other contentions about AFGE's purported violations of the law.

Specifically, in their response to this Court's Order to Show Cause regarding mootness (*see* Min. Order of Jan. 18, 2018), Plaintiffs represented that three outstanding legal questions remain in this action: (1) whether AFGE's refusal to

2

accommodate Plaintiff Hudson's request for email access at an earlier point in time (in January of 2017) violated the LMRDA; (2) whether Plaintiffs are entitled to litigation costs and attorney's fees in connection with their filing of this lawsuit; and (3) whether granting the candidates access to the TrueBallot email system actually fulfills AFGE's obligations under the LMRDA, because even with such access, candidates allegedly were not permitted to distribute literature to local delegates until all local delegates are elected, nor could candidates reach the entire membership of rank-and-file members, including those for whom the union has only a government or union email address on file. (*See* Pls.' Resp. to Show Cause at 5–6, 9–14.)

Plaintiffs' position shifted yet again after AFGE's counsel orally represented during this Court's motion hearing that AFGE *will* permit candidates to make distributions to local delegates using the TrueBallot email system on a rolling basis. (*See* Tr. of Prelim. Inj. Mot. Hr'g at 55:8–18, 63:8–12.) Indeed, the parties have continued to negotiate various access issues, and Plaintiffs have informed the Court regarding the status of their talks and certain concessions that Plaintiffs are apparently willing to make in light of AFGE's representations. (*See* Pls.' Resp. at 1–3.) In their most recent filing, Plaintiffs indicate that, now, the following are the only issues that remain in dispute: (1) "[w]hether the LMRDA gives candidates the right to distribute campaign literature to a specific portion of the membership if such distribution is practical" (i.e., whether any email system that AFGE provides must permit candidates "to select specific portions of the membership" to email); (2) whether Plaintiff Hudson "obtained the [physical] mailing labels [for union members] in 2016 improperly"; (3) whether "AFGE's conduct was inconsistent with the LMRDA's requirements beginning

3

in January 2017"; and (4) whether "Plaintiffs are entitled to be reimbursed for their litigation costs and reasonable attorneys' fees." (*Id.* at 3–5.) Plaintiffs also report that they have offered to withdraw certain previous claims "[b]ased upon conversations with AFGE's counsel . . . *provided* that" AFGE fulfills their new requests. (*See id.* 2–3 (emphasis in original).)

Thus, Plaintiffs appear to believe that this Court stands ready to act as referee and counselor with respect to the parties' perpetual renegotiations of their respective positions on various issues based on real-time developments in the factual landscape as this case proceeds. For the reasons explained below, Plaintiffs are sorely mistaken.

## II.

Federal courts are constrained by Article III of the U.S. Constitution to exercise their powers only with respect to actual "[c]ases" or "[c]ontroversies[.]" U.S. Const. art. III, § 2, cl. 1; *see also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). Given the above recitation of the manner in which this litigation has unfolded, there can be no doubt that intervening events in the instant case—i.e., AFGE's grant of access to TrueBallot, and Plaintiffs' various responses—have "outrun the controversy" that Plaintiffs presented in their complaint, such that at least some of their initial claims are now moot, and this Court "can grant no meaningful relief" with respect to them. *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

Stated simply, the unquestionable gravamen of Plaintiffs' charge against AFGE as set forth in the complaint is that AFGE violated the LMRDA *by denying Plaintiffs access to the TrueBallot email system*. (*See* Compl. ¶ 40 (alleging that "AFGE has

4

denied [them] access to the AFGE TrueBallot email system"); *id.* ¶ 45 (alleging that "General Counsel Borer's refusals to permit candidate Hudson to distribute campaign literature through the TrueBallot system until after the election of all Convention delegates violated the LMRDA"); *id.*, Relief Requested, ¶ 2 (asking the Court to "[d]irect AFGE to grant access to the TrueBallot email system for distribution of campaign literature").) But now that Plaintiffs have been granted access to AFGE's TrueBallot email system and are free to contact delegates whenever they want, they seek to sustain various *new* claims about the *adequacy* of the TrueBallot system (*see, e.g.*, Pls.' Resp. to Show Cause at 8–14 (arguing that the TrueBallot system does not fulfill the requirements of the LMRDA)), including demands that AFGE alter TrueBallot's mechanisms to reflect Plaintiffs' own views about how it should operate (*see, e.g.*, Pls.' Resp. at 4 (asserting that one unresolved issue is whether AFGE must provide "a method for Plaintiffs to be able to select specific portions of the membership" to email)).

Unfortunately for Plaintiffs, the purportedly "remaining issues" related to the features of the TrueBallot system or the propriety of how Plaintiff Hudson obtained physical mailing labels (*id.* at 3) were not squarely presented in Plaintiffs' complaint, and Plaintiffs themselves appear to recognize as much, given their repeated, updated representations regarding the issues that the parties have yet to resolve. It is also clear beyond cavil that a complaint's claims cannot be amended *implicitly*, through subsequent briefing or otherwise, *see Colbert v. District of Columbia*, 78 F. Supp. 3d 1, 13 (D.D.C. 2015); therefore, Plaintiffs' current catalog of disputed issues has no legal effect.

5

An additional complication has arisen with respect to the one issue that Plaintiffs have identified as the sole remaining dispute requiring preliminary injunctive relief— i.e., whether AFGE must accommodate Plaintiffs' request to "be able to select specific portions of the membership" to email. (Pls.' Suppl. Resp. at 3–4.) It appears that Defendant AFGE has not even *responded* to this claim, either orally or in writing, much less responded in a manner that clearly demonstrates that a case or controversy exists with respect to this contention. (*See id.* ("AFGE counsel said he understood the request and would be following up with AFGE on the matter, but he did not waive AFGE's right to object to the legal obligation to provide such selection ability to Plaintiffs.").) Thus, this new legal claim is manifestly unripe, and the Court has no power to review it. *Cf. Socialist Labor Party v. Gilligan*, 406 U.S. 583, 589 (1972) (finding a case premature for adjudication where the remaining issue was "one that received scant attention in [the] complaint" and in the briefing, and any injury was speculative); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citation omitted)).

The bottom line is this: this Court knows full well that lawsuits can be catalysts for change, and as such, they can sometimes evolve as the parties undertake real-time reevaluations of their respective positions. But federal courts can only resolve live disputes that are nonetheless pinned down sufficiently, so as to present concrete, actual controversies for the court to dissect; we have neither the authority nor the ability to adjudicate constantly moving targets. And the instant case has now morphed into a being that bears no resemblance to the matter Plaintiffs first presented to this Court.

6

**III.**

Therefore, it is hereby

**ORDERED** that, on or before **March 16, 2018**, Plaintiffs shall file an amended complaint that reflects their current claims against Defendant AFGE, and removes any claims that have been mooted or withdrawn. For clarity, Plaintiffs are encouraged to plead those claims that pertain to different provisions of the LMRDA (and its related regulations) in separate counts. It is

**FURTHER ORDERED** that, in light of the anticipated amended complaint, Plaintiffs' second motion for preliminary injunction (ECF No. 8) is **DENIED WITHOUT PREJUDICE**. If Plaintiffs believe that preliminary injunctive relief is still necessary with respect to any of the claims that are made in the amended complaint, they may file a new motion for a preliminary injunction, on or before **March 16, 2018**, along with their amended complaint. Following Plaintiffs' submission of the amended complaint and any preliminary injunction motion, the Court will issue an order that addresses Defendant's obligation to answer or otherwise respond to the amended complaint.

DATE: March 2, 2018    *Ketanji Brown Jackson*
                       KETANJI BROWN JACKSON
                       United States District Judge