UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EUGENE HUDSON, JR.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,**<br><br>*Defendant*. | Civil Action No. 17-2543 (FYP) |

## MEMORANDUM OPINION

This case is one of several that Plaintiff Eugene Hudson, Jr., has brought against his union, the American Federation of Government Employees.  In this action, Plaintiff alleges that AFGE violated the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 *et seq.*, when it failed to give him access to its email system to distribute campaign literature in support of his run for National President of AFGE in 2018.  Before the Court is Defendant's Motion to Dismiss, which argues that this Court does not have subject-matter jurisdiction because Plaintiff lacks standing, and because his claims are moot.  For the following reasons, the Court agrees and will grant the Motion.

## BACKGROUND

**I.      Statutory Framework**

Title IV of the LMRDA regulates the procedures that labor unions must follow when they conduct elections.  *See* 29 U.S.C. §§ 481–83; *see also Wirtz v. Hotel, Motel & Club Emp. Union, Local 6*, 391 U.S. 492, 496 (1968) (stating that the purpose of Title IV is to ensure "free and democratic" union elections).  Plaintiff's claims are brought under Section 481(c), which provides:

> Every national or international labor organization . . . shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States . . . to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization[.]

29 U.S.C. § 481(c).  In *Dimondstein v. Am. Postal Workers Union*, Section 481(c)'s requirements were extended to members seeking to distribute campaign material via email addresses maintained by the union.  *See* 964 F. Supp. 2d 37, 43–49 (D.D.C. 2013).

Section 482 of the LMRDA provides for enforcement of the LMRDA's election provisions.  It states that, following a union election, a member of a labor organization can file a complaint with the Department of Labor alleging a Section 481 violation.  *See* 29 U.S.C. § 482(a).  After such a complaint is filed, Section 482 prescribes that

> The Secretary [of Labor] shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States . . . to set aside the invalid election[.]

*Id.* § 482(b).  Lastly, Section 483 of the LMRDA states that "[t]he remedy provided [in Section 482] for challenging an election already occurred shall be exclusive." *Id.* § 483.

## II. Factual Background

Plaintiff Eugene Hudson, Jr., is a member of the American Federation of Government Employees ("AFGE").  *See* ECF No. 21 (Amended Complaint), ¶ 1.  In August 2016, Hudson announced his candidacy for National President of the union at the 2018 AFGE Convention.  *Id.*, ¶ 22.  In January 2017, Hudson requested that AFGE provide him with access to union members' email addresses to distribute campaign literature.  *Id.*, ¶ 27.  On January 23, 2017, AFGE General

Counsel David Borer denied Plaintiff's request, stating that under the AFGE National Constitution, email access for campaign use is not permissible. *Id.*

AFGE later changed its policy and hired a vendor, TrueBallot, Inc., to set up a system for candidates to email campaign materials to members. *Id.*, ¶ 29. Hudson, through counsel Justin Keating, reached out to Borer on August 10, 2017, inquiring how he could use the AFGE email system for campaign purposes. *Id.*, ¶ 31. When Hudson did not receive a response, his counsel, Jonathan Axelrod, sent a follow-up request on August 16, 2017. *Id.*, ¶ 33. Borer responded with a message stating that AFGE had "never received such a request so far in advance of the election date;" that the union had "contacted [a] vendor about setting up a process for the elections that will be held at the 2018 AFGE Convention;" and that AFGE would notify Hudson when the details were worked out. *Id.*, ¶ 34.

On November 3, 2017, Axelrod again contacted Borer, asking when Hudson would be able to obtain email access to union members for his campaign. *Id.*, ¶ 36. After initially not responding, Borer informed Axelrod that access to the email system would not be provided until all the delegates for the National Convention had been selected. *Id.*, ¶ 40. Subsequently, on January 5, 2018, AFGE distributed a memorandum to all candidates, including Hudson, explaining how candidates could contract with TrueBallot to obtain the email addresses of union members in advance of the National Convention in August 2018. *Id.*, ¶ 43. Hudson thus gained access to AFGE's email system approximately eight months before the election. *See id.*

Plaintiff now alleges that AFGE thrice violated the LMRDA, 29 U.S.C. § 481(c), also known as the Landrum-Griffin Act, when the union denied his requests for email addresses in January 2017, August 2017, and November 2017. *Id.*, ¶¶ 47–71. As relief, Plaintiff requests a declaration that AFGE violated 29 U.S.C. § 481(c), and reasonable attorneys' fees. *Id.* at 13–14.

### III. Procedural History

Plaintiff filed his original complaint on November 28, 2017, before he received access to the emails through TrueBallot. *See generally* ECF No. 1 (Complaint). After Plaintiff received access to the email system on January 5, 2018, the Court ordered Plaintiff to amend his complaint to reflect his current claims against AFGE. *See* Memorandum Opinion and Order, dated March 2, 2018, at 2, 7.[1] The operative Amended Complaint was filed on March 13, 2018. *See generally* Am. Compl. Defendant then filed a Motion to Dismiss, arguing that this Court lacks subject-matter jurisdiction, and that Plaintiff fails to state a claim. *See generally* ECF No. 23 (Defendant's Motion to Dismiss).

Subsequently, on August 27, 2018, Defendant filed a notice alerting the Court that the AFGE election for National President had occurred, and that Plaintiff was unsuccessful. *See* ECF No. 26 (Defendant's Notice of Election) at 1. In the notice, Defendant asserted that because the election had occurred, the Court no longer had jurisdiction over the matter. *Id.* at 1–2. Plaintiff then filed a response to Defendant's notice, contending that the Court retained jurisdiction even after the election occurred. *See* ECF No. 27 (Plaintiff's Response to Notice of Election), ¶¶ 2–4. Plaintiff also stated that he planned to file for post-election relief with the Department of Labor. *Id.*, ¶ 1.

On February 15, 2019, Defendant submitted another notice, stating that the Department of Labor had investigated Hudson's post-election complaint, and had found "no basis for action by the Department to set aside the protested election." *See* ECF No. 28 (Defendant's Notice of

---

[1] On March 2, 2018, the Court denied Hudson's Motion for Preliminary Injunction, noting that Plaintiffs' request to send campaign emails by TrueBallot "was seemingly fulfilled on January 5, 2018, when the contractor whom AFGE had hired to prepare the TrueBallot email system for use by candidates to distribute campaign literature completed its work, and Plaintiffs were granted access to that email system." *See* Memorandum Opinion and Order, dated March 2, 2018, at 2.

Department of Labor Determination) at 1.  Plaintiff filed a response, asserting that while the Department of Labor may have concluded that there was no basis to set aside the election, the Department did not explain its reasoning, and thus, did not find that AFGE had not violated Section 481(c).  *See* ECF No. 29 (Plaintiff's Response to Determination), ¶¶ 2–3.

The Court then stayed the case, to enable the parties to engage in global settlement discussions encompassing other cases involving the parties.  *See* Minute Order, dated February 15, 2019.  After mediation was unsuccessful, the Court ordered the parties to submit supplemental briefing on (1) whether and how the Court has jurisdiction over a pre-election Section 481(c) claim after an election has occurred; (2) what effect, if any, a finding of a Section 481(c) violation could have on any and all post-election proceedings; and (3) what relief Plaintiff is seeking, and what authority this Court has to grant such relief.  *See* Order, dated August 12, 2019, at 5.  Specifically, the Court noted that while post-election challenges to the validity of an election are exclusively within the jurisdiction of the Department of Labor, the Section 483 exclusivity provision may not bar other actions that do not challenge election validity.  *Id.* at 3 (citing *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 534, 541 n.16 (1984)).  Thus, the Court requested that the parties address whether this case falls into the "other action" category.  *Id.*  Plaintiff's supplemental brief was due on March 6, 2020, and Defendant's was due on April 3, 2020.  *See* Minute Order, dated January 24, 2020.

Defendant submitted its supplemental brief on April 3, 2020.  *See* ECF No. 44 (Defendant's Supplemental Brief).  After failing to meet his deadline, Plaintiff filed his supplemental brief on January 26, 2021, in response to a Show Cause Order.  *See* ECF No. 45

(Plaintiff's Supplemental Brief); Minute Order, dated January 12, 2021.[2] The parties did not resolve their dispute during another round of mediation; and the Court now turns to the pending Motion to Dismiss, which is ripe for review.[3] *See generally* ECF No. 24 (Plaintiff's Opposition); ECF No. 25 (Defendant's Reply)

## LEGAL STANDARD

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of showing that the court has subject-matter jurisdiction to hear his claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (citation omitted). As a result, "the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (cleaned up).

In policing its jurisdictional bounds, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249,

---

[2] On September 11, 2019, Plaintiff's former attorneys Axelrod and Keating withdrew their representation. *See* Minute Order, dated September 11, 2019. On January 6, 2020, Marlene Morten entered an appearance on behalf of Plaintiff. *See* ECF No. 39 (Notice of Appearance by Marlene Denise Morten). Although Ms. Morten entered her appearance in early 2020, Plaintiff's Supplemental Brief was submitted over a year later by Plaintiff acting *pro se*.

[3] On April 29, 2022, the parties submitted a joint status report in which they indicated that mediation was unsuccessful. *See* ECF No. 49 (Joint Status Report) at 1. In the status report, Plaintiff requested oral argument on the pending motion, or, in the alternative, an opportunity to supplement his opposition to include an out-of-circuit district court case that was decided after the Motion was fully briefed. *Id.* at 2. The Court reviewed the case; determined that it did not warrant supplemental briefing or oral argument; and denied Plaintiff's request. *See* Minute Order, dated May 2, 2022.

1253 (D.C. Cir. 2005) (citation omitted). The court, however, need not rely "on the complaint standing alone," as it may also look to undisputed facts in the record or resolve disputed ones. *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted). By considering documents outside the pleadings on a Rule 12(b)(1) motion, a court does not convert the motion into one for summary judgment, as "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings. *Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987) (emphasis in original).

## ANALYSIS

In its Motion to Dismiss, AFGE argues that (1) this Court lacks subject-matter jurisdiction because Plaintiff does not have standing and his claims are moot; (2) this Court lacks subject-matter jurisdiction under the LMRDA; and (3) Plaintiff fails to state a claim. *See generally* Def. Mot. In its supplemental briefing, Defendant further argues that this Court lacks subject-matter jurisdiction because the Secretary of Labor has exclusive jurisdiction over Plaintiff's claims now that the election is over. *See* Def. Supp. Br. at 3-7. The Court will first address whether it retains subject-matter jurisdiction over Plaintiff's pre-election Section 481(c) claims after the election has occurred, and will then turn to whether Plaintiff has Article III standing.

**I.  The Court Retains Jurisdiction Over Plaintiff's Pre-Election Section 481(c) Claims**

In ordering supplemental briefing, the Court asked the parties to address whether the Court retains jurisdiction over Hudson's pre-election Section 481(c) claims. *See* Order, dated August 12, 2019, at 3, 5. In Defendant's Notice of Election, AFGE took the position that the election extinguished this Court's jurisdiction. *See* Defendant's Notice of Election at 1–2.

7

Plaintiff disputed this position, *see* Plaintiff's Response to Notice of Election, ¶¶ 2–4, but neither party fully briefed the issue, prompting the Court's request for supplemental briefing.

The Supreme Court has concluded that Section 483 of the LMRDA was intended to be the "exclusive post-election remedy for a violation of [Section 481]." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 533 (1972); *see also Crowley*, 467 U.S. at 539–40 (stating that post-election challenges to the validity of an election are exclusively within the jurisdiction of the Secretary of Labor). But the Supreme Court in *Crowley* noted that the exclusivity provision of Section 483 "may not bar postelection relief for Title I [of the LMRDA] claims *or other actions that do not directly challenge the validity of an election already conducted*." *Crowley*, 467 U.S. at 541 n.16 (emphasis added); *see also Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 209 (D.D.C. 2016) (finding that a cause of action arising in the course of a challenged election, and whose resolution "does not require the court to touch on the validity of the election itself," is not preempted by Section 483 (citing *Ross v. Int'l Bhd. of Elec. Workers*, 513 F.2d 840 (9th Cir. 1975))). Thus, Section 483 "divests federal courts of subject-matter jurisdiction to adjudicate claims brought after a completed union election that, in substance, *seek to challenge the election itself*." *Murray*, 206 F. Supp. 3d at 210 (emphasis added).

In Defendant's Supplemental Brief, AFGE argues that the Court can exercise jurisdiction over a pre-election Section 481(c) claim after an election has occurred only if an exception to mootness exists. *See* Def. Supp. Br. at 3. It then asserts that the "capable-of-repetition yet evading review" exception to mootness does not apply because Plaintiff does not contend that there is a constitutional provision, rule, or policy that may injure him in any future campaign. *Id.* at 7. While this Court agrees that Plaintiff's claims are moot, *see infra* Section III, Defendant fails to address whether Plaintiff's claims fall within the exception to the Section 483 exclusivity

provision for "other actions that do not directly challenge the validity of an election." *Crowley*, 467 U.S. at 541 n.16. Plaintiff's Supplemental Brief, which was submitted by Hudson proceeding *pro se*, does not address the legal issue of whether the election divests this Court of jurisdiction. *See generally* Pl. Supp.

Upon close examination of Hudson's claims, the Court concludes that Hudson's pre-election Section 481(c) claims are not preempted by Section 483. Plaintiff alleges that AFGE violated Section 481(c) three times when it did not give him access to the email system before January 2018: He is asking the Court to conclude that those actions violated the LMRDA. *See* Am. Compl. at 13. Plaintiff filed his Complaint before the election took place, and is not challenging the results of the election in this Court. *See generally* Compl.; Am. Compl. Resolving the issue of whether Plaintiff should have had access to the emails before 2018 does not require the Court to "touch on the validity of the election." *See Murray*, 206 F. Supp. 3d at 209. Plaintiff's claims therefore do not directly challenge the validity of the election, but rather assert that pre-election conduct was illegal; the claims thus constitute "other actions" that are not preempted by Section 483. *See Crowley*, 467 U.S. at 541 n.16.

## II.     Plaintiff Lacks Standing

Before reaching the merits of whether AFGE violated the LMRDA, the Court must confirm that it has jurisdiction over a case or controversy under Article III. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). A federal court lacks jurisdiction if the plaintiff does not establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. at 561 (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing [the three] elements" of standing (citation omitted)). Indeed, "a showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658,

663 (D.C. Cir. 1996) (quoting *id.* at 560).  The elements relevant to standing are injury in fact, causation (traceability), and redressability.  First, the plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized," and "(b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (cleaned up).  Second, there must be traceable causation from a defendant's alleged action to a plaintiff's injury.  *See id.*; *see also Fla. Audubon Soc.*, 94 F.3d at 664 ("Causation may thus be said to focus on whether a particular party is appropriate[.]").  Third, the plaintiff must establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (cleaned up); *see also Fla. Audubon Soc.*, 94 F.3d at 663–64 ("Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." (cleaned up)).

Defendant argues that Plaintiff lacks standing because any declaration that he should have been provided with email access at an earlier time will not alleviate any present injury, and his injury is thus not redressable.  *See* Def. Mot. at 10.  In his opposition, Plaintiff admits that an injunction is no longer necessary to remedy the alleged LMRDA violation because he was provided with the email list; but he still contends that the relief sought will redress his alleged injuries.  *See* Pl. Opp. at 19.  According to Plaintiff, a finding that AFGE violated Section 481(c) would allow Plaintiff to inform AFGE's members that the union violated the statutory rights of candidates, which will provide a therapeutic and remedial effect.  *Id.* at 19–20.

Even assuming, *arguendo*, that Plaintiff sufficiently alleges that he suffered a concrete and particularized injury that was caused by AFGE, he fails to show how the relief he seeks redresses the injury.  Plaintiff's claim is simply that he should have been granted access to AFGE's email system before 2018; and he asks only for a finding that the union's denials of his

three requests in 2017 violated the LMRDA.  *See* Am. Compl. at 13–14.  But even if AFGE did violate the LMRDA, "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up).  Plaintiff's alleged injury — failure to receive access to AFGE's email system until January 2018 — is not at all likely to be "redressed by a favorable decision" on the merits.  *Lujan*, 504 U.S. at 561.  Plaintiff suffers no continuing or present adverse effects from the injury, and his mere interest in proving a prior violation is insufficient to establish Article III standing.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (stating that an "interest in the proper administration of the law" is insufficient for Article III standing (cleaned up)).  Even Plaintiff's asserted "therapeutic" interest in informing fellow union members that AFGE violated the LMRDA does not redress Plaintiff's alleged injury, in any legal sense.  Thus, Plaintiff's alleged injury is not redressable, and he lacks standing.[4]

### III. Plaintiff's Claims are Moot

For similar reasons, Plaintiff's claims are also moot.  Although standing and mootness are closely related, the doctrines are distinct.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189–192 (2000).  Mootness arises when "developments occur during

---

[4] This Court's ruling is consistent with the conclusion in a similar case brought by Hudson against AFGE. *See Hudson v. AFGE*, Case No. 17-cv-1447, 2017 WL 4325681 (D.D.C. Sept. 27, 2017).  There, Hudson asserted that a quarterly publication featuring him was removed from campaign mailings.  *Id.* at *1.  The remedy requested by Hudson was a "conclusion that AFGE violated his rights as a candidate for AFGE office."  *Id.*  That court stated that such a declaratory judgment would not remedy the deprivation of Plaintiff's publication being removed.  *Id.* at *3.  Similarly here, a declaratory judgment cannot turn back the clock and give Plaintiff access to the email system at an earlier time.

Defendant also correctly contends that an interest in attorneys' fees alone is insufficient to establish Article III standing.  *See* Def. Mot. at 10.  An "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim[.]"  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *see also Spirit of the Sage Council v. Norton*, 411 F.3d 225, 229 (D.C. Cir. 2005) (dismissing a case for lack of Article III standing when the underlying dispute was resolved and party sought a favorable ruling only for purpose of attorney fees).

11

the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017); *see also McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001) ("If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." (citation omitted)).

Defendant argues that Plaintiff's claims became moot when he gained access to the TrueBallot system to send campaign materials on January 5, 2018. *See* Def. Mot. at 11. Plaintiff asserts that because he was denied access to the emails for a year, from January 2017 to January 2018, the resulting harm is "irreversible;" and that he therefore has a continuing interest in the outcome of this litigation. *See* Pl. Opp. at 19 (citing *McBryde v. Comm. to Review*, 264 F.3d at 55–56). The Court cannot accept Plaintiff's characterization of his harm and continuing interest. Although Plaintiff did not receive access to the email system as soon as he wanted it, he did gain access in January 2018, a full eight months before the election. Plaintiff alleges no continuing harm or financial damage due to that delay in receiving access, and thus fails to show "irreversible" harm. *Cf. Brittain v. AFGE*, Case No. 3:20-cv-92-TJC-PDB, 2021 WL 2315005, at *4-5 (M.D. Fla. June 7, 2021) (finding a continuing controversy even after plaintiff's suspension expired because a suspension on a record can result in the loss of benefits or other financial harms). At bottom, there is no "meaningful relief" that the Court can grant, and Plaintiff's claims are thus moot. *See McBryde*, 264 F.3d at 55.[5]

---

[5] Furthermore, Plaintiff's claims do not fall within the narrow exception to the mootness doctrine. A case is not moot when there is a probability that the challenged conduct is "capable of repetition yet evading review," or when there is a "reasonable expectation" that a similar controversy will arise again between the same parties. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Here, Plaintiff does not allege facts to support application of the exception. Although Plaintiff cites *International Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 476 (1991), for the proposition that receiving access to the email list does not moot the case, that case is distinguishable. *See* Pl. Opp. at 17 n.7. In *Brown*, the Supreme Court determined that the case was not moot where the plaintiff received access to mailing lists, but there was a possibility that he would run for office again and a likelihood that the union would again present an obstacle to mailing due to their rules. *See* 498 U.S. at 473. That

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order will issue this day.[6]

                                    _____
                                    FLORENCE Y. PAN
                                    United States District Judge

Date:   July 26, 2022

---

concern is absent here. Now that the TrueBallot system is functional, there is no indication that AFGE would deny a candidate access to it for campaign purposes.

[6]     In light of the Court's rulings on standing and mootness, it declines to address Defendant's alternative argument that Plaintiff fails to state a claim. *See* Def. Mot. at 14-21.